UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JERRY LEE LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-cv-00254-JRS-DLP |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

**Order Denying Defendant's Motion for Summary Judgment**

Plaintiff Jerry Lee Lewis is currently incarcerated at the United States Penitentiary—Tucson. This action concerns the treatment Mr. Lewis received while incarcerated at the United States Penitentiary—Terre Haute ("USP-TH"). Mr. Lewis asserts a claim under the Federal Tort Claims Act ("FTCA") related to injuries he received when staff at USP-TH used wrist restraints that were too small for Mr. Lewis's wrists.

The United States seeks resolution of the FTCA claim through summary judgment. It asserts that Mr. Lewis has not presented evidence that he suffered a battery under Indiana state law. Mr. Lewis has responded in opposition to the motion for summary judgment, the United States has filed a reply, and Mr. Lewis has filed a sur-reply. For the reasons explained below, the United States's motion for summary judgment is **denied**.

I.  **Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas*

*v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).

To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Not every factual dispute between the parties will prevent summary judgment, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Finally, although *pro se* filings are construed liberally, *pro se* litigants such as Mr. Spears are not exempt from procedural rules. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th

Cir. 2008) (noting that "*pro se* litigants are not excused from compliance with procedural rules"); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced").

## II. Statement of Facts

Applying the standards set forth above, the following statement of facts give Mr. Lewis, as the non-moving party, the benefit of all reasonable inferences.

Mr. Lewis was incarcerated at USP-TH from December 1, 2016, to July 3, 2017. On December 5, 2016, Mr. Lewis told Lieutenant Wingerd about his large wrists, and Lieutenant Wingerd directed a staff member to use large wrist restraints when transporting Mr. Lewis. Lieutenant Wingerd told Mr. Lewis to contact medical staff to get a Medical Duty Status for large wrist restraints. A Medical Duty Status is a note generated by medical staff that recommends accommodations for inmates.

On December 8, 2016, during a general evaluation of Mr. Lewis, FNP Roger Cox noted that standard-size wrist restraints caused a "pressure indentation" on the skin on the back of Mr. Lewis's wrist. Dkt. 60-7 at 15. He noted that a larger diameter wrist restraint might alleviate the issue. FNP Cox completed a Medical Duty Status for Mr. Lewis which stated: "May use larger sized cuff if available per medical. Large wrist diameter noted. Pinches and rubs on the back of each wrist."[1] Dkt. 76-2.

On April 10, 2017, another inmate at USP-TH tackled Mr. Lewis. As a result of this incident, Mr. Lewis was placed in standard-size wrist restraints and taken to a lieutenant's office for a medical examination and questioning about the incident. While in the lieutenant's office, Mr.

---

[1] The same notation appears on another Medical Duty Status dated March 21, 2017, and signed by PA-C Genevieve Muscatell. Dkt. 76-3; Dkt. 60-10.

3

Lewis told Correctional Officer Sims that his hands were numb because the wrist restraints were too tight. After a second complaint from Mr. Lewis, Correctional Officer Sims tightened the wrist restraints as much as possible and ordered another staff member to take Mr. Lewis to the Special Housing Unit ("SHU").

Mr. Lewis was housed in the SHU for the duration of his incarceration at USP-TH. Pursuant to policy, wrist restraints are applied to an inmate in the SHU each and every time he is transported from his cell to another area of the SHU and each time his cell door is opened. Many inmates in the SHU are transported to multiple locations, including the recreational area and holding cells, on a daily basis. Larger wrist restraints are kept in the SHU control center and were kept there during Mr. Lewis's incarceration in the SHU.

On at least five occasions between April 10, 2017, and April 19, 2017, various correctional officers used the standard-size wrist restraints when transporting Mr. Lewis or opening his cell door to transport his cellmate. Often, Mr. Lewis asked the correctional officer to use the larger wrist restraints. Sometimes, the correctional officer noted Mr. Lewis's large wrists but chose to use the standard-size wrist restraints. As a result of using the standard-size wrist restraints, Mr. Lewis's wrists were "clipped," which means the skin of his wrist was caught in the opening of the wrist restraint, and he suffered pain.

On April 19, 2017, Mr. Lewis spoke with Lieutenant Wingerd about the use of the standard-size wrist restraints. He explained that he got injured each time the standard-size wrist restraints were used, and he informed Lieutenant Wingerd of the Medical Duty Status. Lieutenant Wingerd verified the Medical Duty Status with medical staff and placed a copy of the Medical Duty Status form on Mr. Lewis's cell door. Standard procedure in the SHU was to post information specific to an inmate on the cell door so it was visible to all staff.

4

Although the Medical Duty Status was posted on the door of Mr. Lewis's cell, correctional officers used the standard-size wrist restraints to restrain Mr. Lewis on nineteen occasions between April 19, 2017, and June 29, 2017. Many times, Mr. Lewis asked for the larger wrist restraints, showed the correctional officers the injuries to his wrists, or asked for medical attention for his injuries. The correctional officers ignored or denied his requests. On several occasions, Mr. Lewis was restrained with the standard-size wrist restraints because he was moving cells, and the correctional officer would move the Medical Duty Status to the new cell but not heed its direction.

**III.    Analysis**

Pursuant to the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). State tort law of the state where the tort occurred applies when determining "whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries." *Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008); *see also* 28 U.S.C. § 1346(b). Mr. Lewis challenges the treatment he received while incarcerated at USP-TH, which is in Indiana, thus Indiana law applies to this case.

The United States argues that to survive summary judgment, Mr. Lewis must have evidence to support a battery claim. Dkt. 61 at 7. However, "battery is an intentional tort and requires the intent to cause a harmful or offensive contact with the plaintiff." *Price v. Kuchaes*, 950 N.E.2d 1218, 1231 (Ind. Ct. App. 2011). Under the FTCA, a plaintiff may bring suit against the United States for injury "caused by the *negligent* or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1) (emphasis added).

Because the basis for liability under the FTCA is negligence, the applicable Indiana state tort claim is negligence, not battery. Under Indiana law, Mr. Lewis must prove (1) that the United States owed a duty to him; (2) that the United States breached that duty; and (3) that the breach proximately caused his injuries. *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016).

There can be no disagreement that the Federal Bureau of Prisons owed a duty of care to Mr. Lewis during his incarceration at USP-TH. 18 U.S.C. § 4042(a)(2) ("The Bureau of Prisons . . . shall provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons . . . convicted of offenses against the United States . . . ."); *see also Gottlieb v. United States*, 624 F. Supp. 2d 1011, 1025 (S.D. Ind. 2008) ("Indiana law recognizes that a custodian has a legal duty to exercise reasonable care to preserve the life, health, and safety of a person in custody." (citing cases)).

Considering the evidence before the Court in the light most favorable to Mr. Lewis, a reasonable jury could conclude that the correctional officers breached the duty owed to Mr. Lewis when they used wrist restraints that were too small for Mr. Lewis's wrists. Shortly after arriving at USP-TH, Mr. Lewis informed Lieutenant Wingerd and medical staff of his large wrists. Medical staff gave Mr. Lewis a Medical Duty Status noting his large wrists and stating large wrist restraints should be used if available. The United States submitted evidence that large wrist restraints were available in the SHU control center during Mr. Lewis's incarceration in the SHU. Nonetheless, and despite Mr. Lewis's protestations and requests, correctional officers used the standard-size wrist restraints on over twenty occasions.

Finally, Mr. Lewis has presented evidence that the use of standard-size wrist restraints caused injury. He states that he suffered "distress within the wrist area," "numbness within the

palm and finger areas of the hand," "extreme physical pain from restraints metal digging deep into the flesh of the wrist area," and "shard and tingling sensation within the palm and finger areas of the hand." Dkt. 79 at ¶ 3. He also suffered "burning/aching/throbbing pain sensations" and "deep bruising." *Id.* at ¶ 4. These injuries would last at least two days.

Accordingly, the evidence considered in the light most favorable to Mr. Lewis reflects that the United States owed a duty to Mr. Lewis, that the staff at USP-TH allegedly breached that duty by failing to use the appropriate size wrist restraints, and that the breach resulted in harm to Mr. Lewis. The United States' motion for summary judgment is **denied**.

## IV. Conclusion

The United States' motion for summary judgment, dkt. [60], is **denied**. This case will be resolved by settlement or trial. To the extent Mr. Lewis desires assistance of counsel, he must file a motion for assistance with recruiting counsel, including all information required by the Court to consider such a motion. Mr. Lewis shall have **through March 17, 2020**, to either file a motion for assistance with recruiting counsel or notify the Court that he intends to proceed *pro se*.

The **clerk is directed** to include a blank form Motion for Assistance with Recruiting Counsel with Mr. Lewis's copy of this Order.

**IT IS SO ORDERED.**

Date: 2/18/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JERRY LEE LEWIS
03689-017
TUCSON - USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

Kelly Rota
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelly.rota@usdoj.gov